IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | | |
|---|---|---|
| FAYE E. SLICE, | ) | Cause No. CV 07-04-H-DWM-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION OF |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| BRIAN SCHWEITZER, Governor, | ) | TO DISMISS CLAIMS ONE, THREE, |
| State of Montana, et al., | ) | FOUR, AND FIVE |
| | ) | |
| Defendants. | ) | |

_____

This matter comes before the Court on Plaintiff's Amended Complaint filed January 22, 2007 (Document 3) and a supplement to her Complaint filed June 27, 2007. (Document 9).

**I.   STATEMENT OF THE CASE**

**A.   Jurisdiction**

Plaintiff filed her complaint pursuant to 42 U.S.C. § 1983 seeking to recover for official misconduct by a probation officer, official misconduct (retaliation), failure to provide effective assistance of counsel, unlawful incarceration, medical

malpractice/negligence, and sex discrimination.  Accordingly, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**B.   <u>Parties</u>**

Plaintiff is a state prisoner incarcerated at the Montana Women's Prison in Billings, Montana.  Plaintiff is proceeding pro se.

The named Defendants are:  Brian Schweitzer, Governor of the State of Montana; Michael Ferriter, Director of the Department of Corrections; Diana Koch, Chief Legal Counsel for the Department of Corrections; Jo Acton, Deputy Warden of the Montana Women's Prison; the Montana Board of Pardons; Gloria Cowee, Grievance Officer and member of the prerelease screening committee at the Montana Women's Prison; Fern Osler, Administrative Specialist for the Board of Pardons and member of the prerelease screening committee at the Montana Women's Prison; Kelly Speer, former Butte probation officer and currently employed with the Montana Department of Corrections; D.I. Lusby, employed in the ICP/Boot Camp program at the Montana Women's Prison; Nurse Betty Hanson, medical supervisor at the Montana Women's Prison; and Dr. Guyer, employed in the medical department at the Montana Women's Prison.

**C.   <u>Procedural History</u>**

On January 8, 2007, Plaintiff submitted her Complaint and Motion for Leave to Proceed in forma pauperis.  (Documents 1 and

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 2

2).  Plaintiff submitted an Amended Complaint on January 22, 2007. (Document 3).  Plaintiff's motion to proceed in forma pauperis was granted March 2, 2007.  (Document 6).  On June 12, 2007, the Court conducted an initial prescreening of Plaintiff's case, identified several deficiencies in Plaintiff's allegations and allowed Plaintiff to file a supplement to her Complaint. (Document 8).  Plaintiff's Supplement was filed June 27, 2007. (Document 9).  The Court will now complete the prescreening process pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.

II.  **ANALYSIS**

   A.  **Claims barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)**

      A number of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Where a prisoner challenges the fact or duration of their confinement, their sole federal remedy is a writ of habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475, 488-490 (1973); *Young v. Kenny*, 907 F.2d 874 (9th Cir. 1989).  In *Heck*, the Supreme Court held that,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint **must be dismissed** unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487 (emphasis added).  In such a case, a prisoner's sole federal remedy is a writ of habeas corpus.  *See Preiser*, 411 U.S.

475.

Plaintiff has filed a number of claims which in effect are
challenges to her conviction or sentence.  Specifically,
Plaintiff's first claim for relief alleges that Probation Officer
Kelly Speer committed a number of improper acts with regard to
Plaintiff's probation revocation including filing false reports
of probation violations, giving perjured testimony, and
inaccurately calculating good time and time to be served.
(Document 3, pp. 2-3).  Plaintiff's third claim for relief
challenges the effectiveness of representation in her 2003
probation revocation proceedings.  (Document 3, pp. 3-4).
Finally, Plaintiff's fourth claim asserts that Defendants have
refused to give her credit for good time and time spent on parole
and in prerelease and have refused to parole her in retaliation
for asserting her civil rights.

A judgment in favor of Plaintiff on her claims that her term
of incarceration has been unlawfully extended by the "official
misconduct" of Defendant Speer, by the failure to properly
calculate good time credit or credit for time served, by the
failure to grant her parole, and/or because she received
ineffective assistance of counsel would necessarily imply the
invalidity of Plaintiff's sentence.  Therefore, these claims are
not proper in a case under 42 U.S.C. § 1983.

In addition, Plaintiff has already challenged her sentence

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 4

in a federal habeas.  *See* Order at 4, *Slice v. Acton*, Cause No.
CV 4-126-BLG-RWA (D. Mont. July 20, 2006).[1]  Plaintiff did not
challenge the July 2003 revocation on direct appeal or in a
petition for post-conviction relief.  Sometime in 2004, she filed
a petition for writ of habeas corpus in the Montana Supreme
Court, asserting an erroneous calculation of her good time.  The
Montana Supreme Court held that the district court had
jurisdiction to revoke Plaintiff's suspended sentences and
reimpose a twenty-five-year prison term.  On August 3, 2004,
Plaintiff filed a federal petition for writ of habeas corpus
challenging the calculation of her good time by the Department of
Corrections.  That petition was denied on the merits with the
Court finding that, "[t]here was no error at all, much less
unreasonable error, in the Montana Supreme Court's decision."
(Civil Action CV 04-126-BLG-RWA, Document 24, p. 13).  That issue
will not be relitigated.

    Thus, Plaintiff's first, third and fourth claims for relief
and Plaintiff's request for recalculation of her sentence and
that she be granted parole will be recommended for dismissal.  As
Defendants Schweitzer and Koch were only named with regard to
*Heck* barred claims they will also be recommended for dismissal.

---

        [1]A court may take judicial notice of its own as well as
other courts' records.  *See, e.g.*, *Rand v. Rowland*, 154 F.3d 952,
961 (9th Cir. 1998) (en banc); *Zolg v. Kelly* (*In re Kelly*), 841
F.2d 908, 911 n.1 (9th Cir. 1988).

### B.   "Count 2:  Official Misconduct"

Plaintiff's second claim alleges that Defendants Speer, Osler, Cowee, Aldrich, Lusby, and Acton retaliated against her for exercising her constitutional right to petition for redress by filing complaints with the Montana Supreme Court and the Montana Human Rights Bureau about sex discrimination at the prison.  Plaintiff contends Defendants denied her good time, miscalculated her consecutive and concurrent sentences, and denied her placement at a prerelease center, parole, employment, appropriate housing, and educational and vocational training opportunities.  She also avers that her legal and evidentiary documents and computer disks have been destroyed, she has been fired from "Therapeutic Community" positions, placed in lock-up, fired from prison employment, and harassed by "antagonistic" searches of her property.  She also claims that the named Defendants opened, interfered with, delayed delivery of, and refused to post her legal mail and failed to respond or provide written responses to her grievances. (Document 3, p. 3).

> Within the prison context, a viable claim of First
> Amendment retaliation entails five basic elements:  (1)
> An assertion that a state actor took some adverse
> action against an inmate (2) because of (3) that
> prisoner's protected conduct, and that such action (4)
> chilled the inmate's exercise of his First Amendment
> rights, and (5) the action did not reasonably advance a
> legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)(citing

*Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

Plaintiff makes several allegations of retaliation which are subject to dismissal.  First, Plaintiff's allegations that Defendants denied her good time earned on parole and in prerelease; miscalculated the time she served throughout her consecutive and concurrent sentences under the same judgement; denied her the opportunity for prerelease placement and denied her parole are *Heck* barred and have been previously determined as set forth above.

Plaintiff cannot challenge the propriety of her good time calculations and the denial of her parole in a civil 1983 action. *See Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997)*(a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and therefore a prisoner's continuing confinement).  As such, those claims will be recommended for dismissal.

However, Plaintiff's allegations that she was denied prison employment, appropriate housing, education opportunities and vocational training programs; that her legal documents were destroyed and/or interfered with; that she was fired from her employment position; placed in lock-up; had her property searched; and refused responses to her grievances in retaliation for filing complaints against the prison are sufficient to state

a First Amendment retaliation claim.  Accordingly, this claim will be served upon Defendants Speer, Osler, Cowee, Aldrich, Lusby and Acton.

### C.  **Count 5—Medical Malpractice/Negligence**

Plaintiff contends that Defendants Hanson, Ranz, Guyer, Cowee, and Acton refuse to follow "a 2002 directive from the St. James Hospital emergency room physicians" who treated her for a concussion and dislocated shoulder following a fall on a sidewalk.  She avers that she has not received proper diagnostic evaluations of her continuing pain, muscle spasms, bursitis, reduced range of motion and loss of sleep resulting from this injury, despite her complaints of chronic pain.

Though she notes that she was referred to a physical therapist in 2006, she states that he was "significantly limited in his ability to treat" her because of the lack of a proper diagnosis.  She also notes that she has received four different and conflicting diagnoses and treatment plans from four different physicians.  Plaintiff alleges that she may be moved back to a top bunk assignment, which would exacerbate the shoulder injury and bursitis.

Plaintiff states that Defendant Hanson believes Plaintiff needs no treatment because she is continuously employed, exercises vigorously, does biofeedback exercises, yoga, and meditation to maintain her remaining range of motion and avoid

"giv[ing] into the pain," and because she does not seek narcotic pain relief, carry herself as if she is in pain, or have the demeanor of someone who is in pain.

Plaintiff contends that the medical staff refuses to treat her injuries because she "refuse[s] to authorize the co-pay since it is a chronic and ongoing condition preceding [her] incarceration."  She also states that she is denied "multi-vitamin supplements, which have proven anti-inflammatory and healing qualities," and that only non-medical personnel have responded to her medical grievances. (Document 3, pp. 4-5).

The Eighth Amendment requires that prisoners receive adequate medical care. *Estelle v. Gamble, 429 U.S. 97, 104 (1976)*; *see also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)*.  To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle, 429 U.S. at 106*; *Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986)*.

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need." *McGuckin, 974 F.2d at 1059*; *see also*

*Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).
That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)(citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

     The objective component of deliberate indifference requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104); *see also* *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

     The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk

of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 citing *McGuckin*, 974 F.2d at 1060. "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.*

Plaintiff has not made a sufficient showing of deliberate indifference. Although Plaintiff may have had a medical condition which required medical treatment, she admits in her Complaints that she was referred to a physical therapist in 2006 and that she has received four different and conflicting diagnoses and treatment plans from four different physicians. The exhibits submitted with Plaintiff's supplement to her

Complaint also demonstrate that the medical department at MWP were responsive to Plaintiff's claims albeit not necessarily in the manner which Plaintiff requested.  Plaintiff's own description of her medical woes clearly indicates her dissatisfaction with the type of treatment she has been receiving rather than a lack of treatment.  This is not deliberate indifference to a serious medical need.  *See* *Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)* (holding that a difference in opinion over proper medical treatment does not establish deliberate indifference).

Additionally, Plaintiff states (and has produced documentation indicating as such) that medical staff refuses to treat her injuries because she refuses to authorize the co-pay. Charging inmates for medical care is not per se unconstitutional. If a prisoner is able to pay for medical care, requiring such payment is not "deliberate indifference to serious medical needs." *Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480 (1993)*.  Instead, such a requirement simply represents an insistence that the prisoner bear a personal expense that he or she can meet and would be required to meet in the outside world. Plaintiff does not allege that she was denied medical treatment because she was unable to pay the co-pay. *Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 408 (9th Cir. 1985)* (charging inmates for medical care does not violate the

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 12

Eighth Amendment).  A prison charging inmates a co-pay is constitutionally permissible so long as the inmate can afford it.

Therefore, Plaintiff cannot state a claim for denial of medical care under the Eighth Amendment of the United States Constitution and this claim will be recommended for dismissal. As Nurse Hanson and Dr. Guyer were presumably only involved in Plaintiff's medical care claims, they will be recommended for dismissal.

**D.  Sex Discrimination**

Plaintiff alleges that she has been discriminated against based upon her gender because she has been denied "all pre-release placement, parole, educational, vocational, on & off-site employment, Prison Industries, housing, recreation, classification and other rights afforded male inmates" at Montana State Prison.  (Document 3, p. 5).

Title IX of the Education Amendment of 1972 (20 U.S.C. § 1681) prohibits gender discrimination in education programs in state prisons.  *Jeldness v. Pearce*, 30 F.3d 1220 (9th Cir. 1994).  Similarly, inmates retain protection of the Equal Protection Clause of the United States Constitution.  *Turner v. Safley*, 482 U.S. 78, 84 (1987).  When state actors intentionally classify persons based on gender, those classifications require an exceedingly persuasive justification.  *See United States v. Virginia*, 518 U.S. 515, 532-33 (1996).  Therefore, the Court will

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 13

require Defendants to respond to Plaintiff's allegations of sex discrimination.

However, Plaintiff's discrimination claims will be limited by the applicable statute of limitations.  Plaintiff filed her Complaint on January 8, 2007.  The statute of limitations for actions under 42 U.S.C. § 1983 is three years.  *See* Mont. Code Ann. § 27-2-204(1) (2001); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  "A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (internal citations and quotations omitted); *see also DeAnza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991); *Vaughan v. Grijalva*, 927 F.2d 476, 480 (9th Cir. 1991).  Plaintiff has not set forth any basis for equitable tolling.  Therefore, Plaintiff's claims based on acts occurring prior to January 8, 2004, are barred by the three-year statute of limitations.

**E.  Religious Claim**

Although not specifically set forth in her Amended Complaint, Plaintiff has alleged facts in the supplement to her Complaint, which could be liberally construed as allegations of violations of the Establishment Clause of the First Amendment. Specifically, Plaintiff states that MWP requires all female inmates to "fully and sincerely participate" in Christian "Faith-

Based" 12-step addiction programs regardless of the inmates lack of chemical dependency or religious preferences.  She alleges that inmates are required to attend three daily meetings and participate in readings and reflections.  Plaintiff alleges that she practices Buddhism and is being forced to comply with these Judeo-Christian rituals.  She alleges that the only alternative to participation in these programs is Administrative Segregation, "which results in being classified as program non-compliant, loss of employment, loss of education, recreation and other rights afforded inmates at MWP." (Document 9, p. 6).

"For the government to coerce someone to participate in religious activities strikes at the core of the Establishment Clause of the First Amendment." *Inouye v. Kemna*, 504 F.3d 705 (9th Cir. 2007) (coercing parolees to participate in programs such as AA or NA is unconstitutional).  The basic test for Establishment Clause violations was articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), which requires that government acts (1) not have a "secular legislative purpose," (2) not have a "principal or primary effect" which either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement" with religion.  As the United States Supreme Court has clearly stated, "[n]either a state nor the Federal Government .... can force nor influence a person to go to or to remain away from church against

his will or force him to profess a belief or disbelief in any religion.  No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Board of Education of Ewing Township,* 330 U.S. 1, 15-16, 67 S.Ct. 504, 91 L.Ed. 711 (1947). "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman,* 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).

Accordingly, the Court will require a response from Defendants on this claim.

**E.  Montana Board of Pardons**

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI; *see also Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).  The United States Supreme Court has interpreted this amendment to mean that absent waiver, neither a State nor an agency of the State acting under its control may "be subject to suit in federal court." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).  The

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 16

State of Montana has waived immunity only for tort claims brought in state court.  Mont. Code Ann. § 2-9-101 et seq.  The Board of Pardons is an agency under the administration of the Department of Corrections.  Mont. Code Ann. § 2-15-2302(6); *Worden v. Montana Board of Pardons and Parole*, 289 Mont. 459, 962 P.2d 1157 (Mont. 1998).  Hence Plaintiff's claims for damages against the Montana Board of Pardons, as a state agency, are not cognizable in federal court and will be recommended for dismissal.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1.  Plaintiff's first, third, fourth and fifth claims for relief should be dismissed.

2.  Defendants Schweitzer, Koch, Hanson, Guyer and the Montana Board of Pardons should be **DISMISSED.**

3.  All claims arising prior to January 8, 2004 should be **DISMISSED** as being barred by the applicable statute of limitations.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date that this Findings and Recommendation is entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 17

determination of those portions of the Findings and
Recommendations to which objection is made.  The district judge
may accept, reject, or modify, in whole or in part, the Findings
and Recommendations.  Failure to timely file written objections
may bar a de novo determination by the district judge.

**PLAINTIFF IS CAUTIONED TO KEEP THE COURT ADVISED OF ANY
CHANGE OF ADDRESS.  A FAILURE TO DO SO COULD RESULT IN THE
DISMISSAL OF THIS CASE WITHOUT FURTHER NOTICE TO PLAINTIFF.**

DATED this 22nd day of April, 2008.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DISMISS CLAIMS ONE, THREE, FOUR AND FIVE / PAGE 18