# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| FAYE E. SLICE,<br><br>   Plaintiff,<br><br> vs.<br><br>MIKE FERRITER, Director of the<br>Montana Department of Corrections,<br>et. al.,<br><br>   Defendants. | Cause No. CV 07-0004-H-DWM-RKS<br><br><br>FINDINGS AND RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE JUDGE TO<br>GRANT DEFENDANTS' MOTION FOR PARTIAL<br>SUMMARY JUDGMENT |

At issue are Defendants' Motion for Partial Summary Judgment (Document 28), Plaintiff's Motion to Reinstate Previously Dismissed Claims (Document 39), and Plaintiff's Motion for Court Appointed Legal Counsel (Document 41).

## I. STATEMENT OF THE CASE

### A. Jurisdiction

Plaintiff filed her Complaint pursuant to 42 U.S.C. § 1983.  After the Court's prescreening pursuant to 28 U.S.C. § 1915 and 1915A, the remaining claims involve Plaintiff's allegations of sex discrimination, retaliation, and violations of the Establishment Clause.   There is federal question jurisdiction pursuant to 28 U.S.C. § 1331.

FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE -CV-07-4-H-DWM-RKS / PAGE 1

### B.    Parties

Plaintiff is currently a federal prisoner incarcerated at the Dublin Federal Correctional Institution in California.  At all times relevant to her Complaint, Plaintiff was incarcerated at the Montana Women's Prison in Billings, Montana.

The named Defendants are:  Michael Ferriter, Director of the Department of Corrections; Jo Acton, Deputy Warden of the Montana Women's Prison; Michael Aldrich, Deputy Warden of Montana Women's Prison; Gloria Cowee, Grievance Officer and member of the prerelease screening committee at the Montana Women's Prison; Fern Osler, Administrative Specialist for the Board of Pardons and member of the prerelease screening committee at the Montana Women's Prison; Kelly Speer, former Butte probation officer and currently employed with the Montana Department of Corrections; and D.I. Lusby, employed in the ICP/Boot Camp program at the Montana Women's Prison.

### C.    Allegations

Plaintiff's remaining claims are retaliation, sex discrimination, and violations of the Establishment Clause.  Plaintiff's retaliation claim alleges she suffered prolonged and significant retaliation by the Department of Corrections and Montana Women's Prison as a result of the complaints she filed with the Montana Supreme Court and the Montana Human Rights Bureau about sex

discrimination at the Department of Corrections and the Montana Women's Prison since 2003.  Upon prescreening, Plaintiff's allegations that she was denied prison employment, appropriate housing, education opportunities, and vocational training programs; that her legal documents were destroyed and/or interfered with; that she was fired from her employment position; placed in lock-up; had her property searched; and refused responses to her grievances in retaliation for filing complaints against the prison were found to be sufficient to state a First Amendment retaliation claim.

Plaintiff also alleges the Montana Women's Prison engaged in institutional sex discrimination against her since April 2003 by denying her educational, vocational, on and off-site employment, prison industries employment, housing, recreation, classification, rights routinely afforded male inmates at MSP, and rights detailed in DOC policy.

Finally, in her Establishment Clause claim, Plaintiff alleges she was forced to participate in a quasi "Therapeutic community /Boot camp" program (which Plaintiff contends is a faith based program) under threat of disciplinary action and loss of privileges.  She contends she was placed in temporary lock-up and received other sanctions for refusing to participate.  She argues male inmates are not forced to do the same programs.  (Document 3, p. 5).

## II.    MOTION FOR PARTIAL SUMMARY JUDGMENT

A party is entitled to summary judgment if they demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of setting forth the basis of the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party meets this burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson, 477 U.S. at 248*. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.

Plaintiff "must produce at least some 'significant probative evidence tending to support the complaint.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(citations omitted). Only disputes over

facts that might affect the outcome of the suit under the governing law are

"material" and will properly preclude entry of summary judgment.  *Anderson*, 477

U.S. at 248.  At the summary judgment stage, the Court does not weigh the

evidence or determine the truth of the matter, but ascertains whether there is a

genuine issue for trial.  If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted.  *Anderson,* 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-
> moving party's] position will be insufficient; there must be evidence
> on which the jury could reasonably find for the [non-moving party].
> The judge's inquiry, therefore, unavoidably asks whether reasonable
> jurors could find by a preponderance of the evidence that the plaintiff
> is entitled to a verdict.

*Anderson*, 477 U.S. at 252.

### A.    Undisputed Facts

On November 11, 2004, Plaintiff filed a complaint against the Montana

Women's Prison, with the Montana Human Rights Bureau (Case No.

0055011294).  Plaintiff alleged sexual discrimination at Montana Women's Prison

in the areas of education, employment, job training, commissary, visitation, parole,

and community work release programs.  Plaintiff alleged women inmates were

denied equal opportunities in the above areas that are routinely afforded to male

inmates at Montana State Prison. (Document 32-2, p. 1, ¶ II:  Complaint of

Discrimination (Exhibit 1 to Murray Affidavit)).[1]

On May 11, 2005, the Human Rights Bureau, after conducting an informal investigation, issued its Final Investigative Report, finding Plaintiff's allegations in her November 11, 2004 complaint were supported by a preponderance of evidence.  The Human Rights Bureau recommended a finding of reasonable cause to believe unlawful discrimination occurred.  (Document 31-2:  HRB Final Investigative Report).

On January 9, 2007, Plaintiff and the Department of Corrections entered into a Stipulation to resolve the November 11, 2004 Complaint "outside of costly litigation." (Document 32-3:  January 9, 2007 Stipulation).

On January 16, 2007, Terry Spear, Hearing Examiner, Hearings Bureau, Montana Department of Labor and Industry, signed a Dismissal Order pursuant to the parties' stipulation providing:

> 2. The Montana Department of Corrections ("DOC"), the respondent in this matter, denies any discriminatory practices in the administration of the Montana Women's Prison ("MWP"), but agrees, for purposes of resolving this litigation, (as do the complaining inmates) that the hearing examiner in this contested case shall issue this order of dismissal, ordering compliance with the conditions of the stipulation as the basis for the dismissal.

---

[1]Defendants referred to Plaintiff's Responses to Defendants' Requests for Admission in several places in their Statement of Undisputed Facts.  Those responses have not been filed, are not part of the record, and have not been considered in this analysis.

> 3. Pursuant to the terms and conditions of the stipulation, with which the hearing examiner now orders the parties to comply, this case is dismissed.

(Document 32-4:  Dismissal Order dated January 16, 2007 (Exhibit 3 to Murray Affidavit)).

On March 3, 2005, Plaintiff filed a second complaint with the Human Rights Bureau against the Montana Department of Corrections (Case No. 0055011448).  Plaintiff alleged Defendants fired her from her position as Library Assistant in retaliation for filing her first Human Rights Complaint regarding sex discrimination. (Document 32-5:  March 3, 2005 Complaint of Discrimination (Exhibit 4 to Murray Affidavit)).

On August 21, 2005, the Human Rights Bureau, after conducting an informal investigation, issued a Final Investigative Report finding the allegations of Plaintiff's second complaint were not supported by a preponderance of the evidence.  The investigator recommended a finding of no reasonable cause to believe unlawful discrimination occurred.  (Document 32-6:  Final Investigative Report dated August 24, 2005 (Exhibit 5 to Murray Affidavit)).  On August 25, 2005, the Human Rights Bureau issued a Notice of Dismissal and Notice of Right to File Civil Action in District Court.  The Notice stated the decision to dismiss is final and completes the administrative process unless either party files objections

seeking Commission review of the decision within fourteen days after service of

the Notice.  (Document 32-7:  Notice of Dismissal dated August 25, 2005 (Murray

Affidavit, ¶ 8)).  Plaintiff did not file any objections seeking Commission review

of this decision.  (Document 32:  Murray Affidavit, ¶ 9).  The Notice also provided

that in order to pursue the complaint, Plaintiff would have to petition the district

court in the district where the alleged violation occurred for appropriate relief.

Plaintiff was specifically advised,

> THE PETITION MUST BE FILED WITHIN NINETY (90) DAYS
> OF THE RECEIPT OF THIS NOTICE UNLESS AN APPEAL IS
> FILED.  IF AN APPEAL IS FILED, THE CHARGING PARTY
> WILL HAVE NINETY (90) DAYS FROM THE FINAL ORDER OF
> THE HUMAN RIGHTS COMMISSION AFFIRMING THE
> NOTICE OF DISMISSAL.  IF THE CHARGING PARTY FAILS TO
> FILE THE PETITION IN DISTRICT COURT WITHIN THE
> NINETY (90) DAY PERIOD, THE COMPLAINT IS BARRED AT
> BOTH THE ADMINISTRATIVE AND JUDICIAL LEVELS.

(Document 32-7, Exhibit 6–August 25, 2005 Final Investigative Report, p. 2, ¶ 5,

capital lettering in original).  Plaintiff did not appeal this decision.

On February 25, 2008, after Plaintiff's case in this Court had been pending

for over a year, Plaintiff filed a third complaint with the Human Rights Bureau

against the Department of Corrections and the Montana Women's Prison (Case

No. 0085012860).  Therein, Plaintiff alleged "[t]he Respondents discriminate

against me by forcing me to participate in a 12-step religious program called

Therapeutic Community, which violates my First Amendment rights of freedom of religion and speech." (Document 32-8:  Complaint in HRB Case No. 0085012860 (Exhibit 7 to Murray Affidavit, ¶ 10).

On August 21, 2008, the Human Rights Bureau, after conducting its informal investigation, issued its Final Investigative Report finding Plaintiff failed to establish the Therapeutic Community Program was a religion or a faith based program, and a preponderance of the evidence does not support the charge of religious discrimination. (Document 32-9:  Final Investigative Report dated August 21, 2008 (Exhibit 8 to Murray Affidavit, ¶ 11)).

On August 25, 2008, the Human Rights Bureau issued its Notice of Dismissal and Notice of Right to File Civil Action in District Court in Case No. 0085012860, stating the decision to dismiss is final and completes the administrative process unless either party files objections seeking Commission review within fourteen days of the Notice. (Document 32-10:  Notice of Dismissal dated August 25, 2008 (Exhibit 9 to Murray Affidavit, ¶ 12)).

> THE COMPLAINT MUST BE FILED WITHIN NINETY (90) DAYS AFTER THE ISSUANCE OF THIS NOTICE UNLESS AN APPEAL TO THE COMMISSION IS FILED.  IF AN APPEAL IS FILED, THE CHARGING PARTY WILL HAVE NINETY (90) DAYS FROM THE FINAL ORDER OF THE COMMISSION AFFIRMING THE NOTICE OF DISMISSAL.  IF THE CHARGING PARTY FAILS TO FILE A COMPLAINT IN DISTRICT COURT

WITHIN THE NINETY (90) DAY PERIOD, THE COMPLAINT IS
BARRED AT BOTH THE ADMINISTRATIVE AND JUDICIAL
LEVELS.

(Document 32-7, Exhibit 9–August 25, 2008 Final Investigative Report, p. 2, ¶ 5,

capital lettering in original).  Plaintiff did not file any objections seeking

Commission review of the Human Rights Bureau's decision in this matter.

(Document 32:  Murray Affidavit, ¶ 13).  Plaintiff did not appeal this decision.

   **B.  Analysis of Motion for Partial Summary Judgment**

      **1.  Federal Law on Preclusion**

   As a matter of federal common law, "[w]hen a state agency acts in a judicial

capacity to resolve disputed issues of fact and law properly before it, and when the

parties have had an adequate opportunity to litigate those issues, federal courts

must give the state agency's fact-finding and legal determinations the same

preclusive effect to which it would be entitled in that state's courts." *Olson v.*

*Morris*, 188 F.3d 1083 (9th Cir. 1999).  Federal courts must give preclusive effect

to administrative adjudications of legal and factual issues, even if unreviewed,

where (1) the administrative agency acted in a judicial capacity, (2) the agency

resolved disputed issues of fact properly before it, and (3) the parties had an

adequate opportunity to litigate.  *Miller v. County of Santa Cruz*, 39 F.3d 1030,

1033 (9th Cir. 1994) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S.

394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

Because parties need only have the opportunity to litigate, they may not "obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (internal quotations omitted).  Instead, in considering whether the parties had the opportunity to litigate, courts will consider the available administrative process, including the availability of judicial review through a petition for a writ of mandamus.  A state administrative procedure provides an adequate opportunity to litigate only if it includes some form of judicial review.  *Wehrli v. County of Orange*, 175 F.3d 692, 693 (9th Cir. 1999).

The initial inquiry in a claim preclusion analysis such as the one in the present case is whether the *Utah Construction* fairness requirements are met. *See Miller*, 39 F.3d 1030; *see also Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir. 1995) (findings of administrative agencies must satisfy both State requirements and *Utah Construction* factors to have preclusive effect in federal court).  The Court must analyze the administrative proceeding to determine whether it comported with basic due process requirements.  *Miller* is clear that an administrative ruling is only entitled to preclusive effect when it "was conducted with sufficient safeguards to be equated with a state court judgment." 39 F.3d at 1032; *see e.g.,*

*Embury v. King*, 191 F.Supp.2d 1071, 1082 (N.D.Cal. 2001) (distinguishing *Miller* and declining to give preclusive effect to unreviewed agency decision where hearing lacked procedural safeguards).

To answer this question, the Court must examine the procedures set forth by the Montana Human Rights Act.  The Montana Human Rights Commission is a quasi-judicial board given rulemaking authority by the Montana Legislature to adopt rules necessary to implement the Montana Human Rights Act.[2]  *See* Mont. Code Ann. §§ 2-15-1706 and 49-2-204; *Martinell v. Montana Power Co.*, 268 Mont. 292, 886 P.2d 421 (Mont. 1994); *Eklund v. Trost*, 335 Mont. 112, 151 P.3d 870, 2006 MT 333 (Mont. 2006) (governmental agencies act in a quasi-judicial role when the law commits to the agency the duty of looking into facts and applying discretion in acting upon them); *see also* Mont. Code Ann. § 2-15-102(10) ("Quasi-judicial function" means an adjudicatory function exercised by an agency involving exercise of judgment and discretion, including but not limited to interpreting, applying, and enforcing existing rules and laws; determining rights and interests of adverse parties; evaluating and passing on facts).

The Montana Human Rights Act prohibits discrimination by the state based

---

[2]Unless otherwise noted all citations to the Montana Human Rights Act are to the 2007 Montana Code.  Substantive changes made between 2004 when Plaintiff filed her first Human Rights Complaint and 2008 when she filed her third complaint will be noted.

on sex.  Mont. Code Ann. § 49-2-308.  It also prohibits retaliation based upon

filing a complaint under the Act.  Mont. Code Ann. § 49-2-301; *see also Saucier v.*

*McDonald's Restaurants of Montana, Inc.*, 342 Mont. 29, 179 P.3d 481, 489, 2008

MT 63, ¶ 38 (Mont. 2008).  The Act established the exclusive state law remedy for

unlawful discrimination and retaliation.  Mont. Code Ann. § 49-2-509(7) (repealed

in 2007).  Thus, "a plaintiff subjected to acts which constitute unlawful

discrimination in employment may not maintain a traditional tort action based on

that conduct; rather, the plaintiff is limited to the specific procedures and remedies

established in the MHRA." *Saucier*, 179 P.3d at 490 (citing *Harrison v. Chance*,

244 Mont. 215, 220, 797 P.2d 200, 203 (Mont. 1990)).  "This exclusivity

provision has not been legislatively altered in relevant part since its enactment in

1987." *Saucier*, 179 P.3d at 490, n.2.

    In order to pursue this remedy, an aggrieved party must file a complaint

with the Human Rights Bureau of the Montana Department of Labor within 180

days after the alleged unlawful discriminatory practice occurred or was

discovered.  Mont. Code Ann. § 49-2-501(1), (4)(a), Admin.R.Mont. 24.8.201(1).

A timely filed complaint triggers an informal investigation by the Department of

Labor.  Mont.Code.Ann. § 49-2-504(1)(a) (2004).  The Department concludes its

investigation by issuing a written finding, which must include a brief statement of

the reasons for the Department's conclusions. Mont.Admin.R. 24.8.220 (1) (2004). If the Department determines the allegations of the complaint are not supported by a preponderance of the evidence or it lacks jurisdiction over the complaint, the department will issue a finding of no reasonable cause. A finding of no reasonable cause will be accompanied by a notice of dismissal and right to sue in accordance with Mont. Code Ann. § 49-2-504(7)(b); Mont.Admin.R. 24.8.403; and Mont.Admin.R. 24.8.220(1)(b) (2004).

If the Department determines the allegations are supported by a preponderance of the evidence, it shall attempt to achieve a resolution of the complaint by conference, conciliation, and persuasion that, in addition to providing redress for the complaint, includes conditions that eliminate the discriminatory practice, if any, identified in the investigation. Mont. Code Ann. § 49-2-504(1)(a)(2004); § 49-2-504(1)&(2)(2007). If informal efforts to eliminate the alleged discrimination are unsuccessful, the department shall hold a hearing on the complaint. Mont. Code Ann. § 49-2-505(1). The department shall serve notice of the hearing and a copy of the complaint on the parties. Mont. Code Ann. § 49-2-505(1).

The hearing and any subsequent proceedings must be held in accordance with the applicable portions of the Montana Rules of Civil Procedure and the

Montana Rules of Evidence as adopted by the department. Mont. Code Ann. § 49-2-505(3)(a); Mont. Code Ann. § 49-2-204. Any resolution of the complaint agreed to after the Department issues a reasonable cause finding must be in writing, signed by the parties, and approved by the Department. Upon approval, the Department must dismiss the case.

Dismissal constitutes the end of the administrative process. Mont.Admin.R. 24.8.301(1), (4). A conciliation agreement may be enforced by the Commissioner or by any party in the same manner as a final order of the Department by seeking appropriate orders in the district court. Mont. Code Ann. § 49-2-508. The Commissioner or a party may also commence a civil action in the district court for relief for a breach of a conciliation agreement. Mont. Code Ann. § 49-2-508; Mont.Admin.R. 24.8.301(8).

If the Department, after an investigation, determines the allegations of unlawful discrimination are not supported by a preponderance of the evidence, it must dismiss the complaint. Mont. Code.Ann. § 49-2-509(3(c)(2004)(repealed); Mont. Code Ann. § 49-2-511(2007). However, the charging party may continue the administrative process by filing objections with the Commission. The Commission must review the decision in informal proceedings under Mont. Code Ann. § 2-4-604 which provides for an opportunity to present evidence and written

statements, entitles the parties to a written statement of the findings, and requires a

comprehensive record of the proceedings.  Mont. Code.Ann. § 49-2-509(4)

(2004)(repealed).  A party may ask the state district court for a de novo review of a

decision of the Commission made under this section.  Mont. Code Ann. § 49-2-

509 (4) (2004)(repealed).  Under Mont. Code Ann. §§ 49-2-511, 49-2-505 (2007),

the Commission must consider the objection in an informal hearing and review the

Department's findings for an abuse of discretion. If the objection is overruled the

Commission shall issue an order affirming the Department's Notice of Dismissal.

If the objection is sustained, the Commission must reopen the case by remanding it

to the Department for a contested case hearing.  Mont. Code Ann. § 49-2-511(2)(b)

and (b)(2007).

Actions brought before the Human Rights Commission are subject to the

requirements of the Montana Administrative Procedure Act, Title 2, chapter 4, part

6, Montana Code Annotated.  *Benjamin v. Anderson*, 327 Mont. 173, 112 P.3d

1039, 1045, 2005 MT 123 ¶ 30, 112 P.3d 1039, 1045 (Mont. 2005).  The Montana

Administrative Procedure Act provides for judicial review by the district court and

the Montana Supreme Court.  *Nasi v. State Department of Highways*, 753 P.2d

327, 329 (Mont. 1988).  A party may appeal the initial investigation, a hearing

decision or the decision of the Commission in district court.  Mont. Code.Ann. §

49-2-509(9) (2004)(repealed); Mont. Code Ann. § 49-2-511(3)(a)(2007); *Saucier,*
*342 Mont. at 41, 179 P.3d at 490, 2008 MT 63 at ¶ 42*.

    This statutory scheme is sufficient to meet the fairness requirements of *Utah*
*Construction*.  Plaintiff had the opportunity to present evidence, make arguments

to the investigator, and she received a written decision rejecting her arguments.  In

her first complaint regarding sex discrimination she was represented by counsel

and could have, had the parties not settled the matter, gone to a hearing where her

counsel could have presented evidence on her behalf.  In her second and third

complaints, Plaintiff had the opportunity to present evidence and make arguments

regarding her claims to the investigator.  In both cases, Plaintiff was given written

notice of the dismissal and notified of her right to appeal the decision to the

commission, which she did not utilize.

    Most importantly, Plaintiff was notified she could appeal the dismissal of

her claims to the district court.  It is well established that "the availability of

judicial review is a crucial factor in determining preclusive effect [of

administrative decisions]." *Wehrli*, 175 F.3d at 694; *see also Misischia v. Pirie*, 60

F.3d 626, 630 (9th Cir. 1995) (precluding a § 1983 action because dentist did not

seek state court judicial review, although he had the opportunity, of dental board's

decision denying him a dental license); *Eilrich v. Remas*, 839 F.2d 630, 632-33

*(9th Cir. 1988)* (giving preclusive effect to state administrative decision where the plaintiff failed to seek judicial review).  A plaintiff "cannot obstruct the preclusive use of the state administrative decision simply by foregoing [his] right to appeal [to state court]."  *Wehrli*, 175 F.3d at 694 (*quoting Plaine v. McCabe*, 797 F.2d 713, 719 n. 12 (9th Cir. 1986)).

The Human Rights Bureau therefore is set up and acts in a judicial capacity. The written findings of the investigators demonstrate the resolution of issues of fact before the agency and as set forth above, Plaintiff had an adequate opportunity to litigate her claims in front of the agency.  Having found the fairness requirements met by the procedural protections of the Human Rights Act, the Court will examine whether the individual complaints Plaintiff filed with the Human Rights Bureau meet Montana standards on preclusion.

## 2.  Montana Law on Giving Agency Decisions Preclusive Effect

Under Montana law, both res judicata and collateral estoppel are "based on a judicial policy favoring a definite end to litigation." *Stanley and Carolyn M. Watkins Trust v. Lacosta ("Watkins Trust")*, 92 P.3d 620, 626 ¶ 26 (Mont. 2004). "The doctrine of res judicata prevents a party from relitigating a matter that the party has already had an opportunity to litigate." *Federated Mut. Ins. Co. v. Anderson ("Anderson")*, 991 P.2d 915, 936 ¶ 58 (Mont. 1999).  Res judicata

applies if:

> (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues between them.

*Watkins Trust*, 92 P.3d at 626, ¶ 27.

Where it applies, "[t]he doctrine of res judicata bars not only issues that were actually litigated, but also those that could have been litigated in a prior proceeding." *In re Marriage of Kolczak*, 97 P.3d 1091, 1093 ¶ 14 (Mont. 2004) (citing *Mills v. Lincoln County*, 864 P.2d 1265, 1267 (Mont. 1993)).  "A party should not be able to litigate a matter that the party already had the opportunity to litigate." *Kolczak*, 97 P.3d at 1094, ¶ 14 (citing *Sheffield Ins. v. Lighthouse Properties*, 828 P.2d 1369, 1371 (Mont. 1992)).  Where a litigant attempts to pursue a new cause of action on the basis of an event or occurrence that has already been litigated, he is barred by res judicata. *See Xu v. McLaughlin Research Inst. for Biomedical Science*, 119 P.3d 100, 106 ¶ 35 (Mont. 2005) (applying res judicata to defamation claim against defendant-employer where plaintiff-employee had already litigated claims for wrongful discharge, Montana Human Rights Act violations, emotional distress, and negligence); *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir. 2001) ("res judicata not only bars claims

litigated in a former action, but also claims that might have been litigated in the former action.") (citing *Balyeat Law, P.C. v. Hatch*, 942 P.2d 716, 717 (Mont. 1997)).

Res judicata applies to administrative proceedings that possess a judicial character. *Nasi v. State Dep't of Highways*, 231 Mont. 395, 397, 753 P.2d 327, 329 (1988).

Applying the *Utah* Fairness requirements and Montana's res judicata elements to Plaintiff's three administrative proceedings at issue, the Court concludes that the dismissal of each of these complaints should be given preclusive effect in this Court.

### 3. January 9, 2007 Stipulation

Plaintiff's first complaint to the Human Rights Bureau, alleging sex discrimination, was resolved through a January 9, 2007 Stipulation of Dismissal. On January 16, 2007, Terry Spear, Hearing Examiner, Hearings Bureau, Montana Department of Labor and Industry, signed a Dismissal Order pursuant to the parties' stipulation providing:

> 2. The Montana Department of Corrections ("DOC"), the respondent in this matter, denies any discriminatory practices in the administration of the Montana Women's Prison ("MWP"), but agrees, for purposes of resolving this litigation, (as do the complaining inmates) that the hearing examiner in this contested case shall issue

this order of dismissal, ordering compliance with the conditions of the
stipulation as the basis for the dismissal.

   3. Pursuant to the terms and conditions of the stipulation, with
which the hearing examiner now orders the parties to comply, this
case is dismissed.

(Document 32-4:  Dismissal Order dated January 16, 2007 (Exhibit 3 to Murray

Affidavit)).

  The parties to Plaintiff's first complaint include the same parties in the

current litigation.  Plaintiff was a complaining inmate in the Human Rights case

and the respondent was the Montana Women's Prison (Department of

Corrections).  Plaintiff has named Mike Ferriter, as the Director of the Department

of Corrections in the current litigation.

  The subject matter (sex discrimination as between Montana Women's

Prison and the Montana State Prison) is the same.  Although the issues are not

identical, all the issues resolved in the Human Rights case were also raised herein.

Finally, the capacities of the parties are the same in reference to the subject matter

and the issues between them.

  A release of a civil rights claim under 42 U.S.C. § 1983 is controlled by

federal common law. *Hisel v. Upchurch*, 797 F.Supp. 1509, 1518 (D.Ariz. 1992).

Settlement agreements have the attributes of contracts, and they should be

construed as such. *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 733 (9th Cir. 1986).  The language of the contract should be construed to carry out the intention of the parties in light of all the facts and surrounding circumstances. *U.S. v. Irvine*, 756 F.2d 708, 711 (9th Cir. 1985).

Settlement agreements are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment.  18 C. Wright. A. Miller & E. Cooper, *Federal Practice and Procedure* § 4442, at 384 (1981).  Here, however, the Stipulation is absolutely silent as the settlement's intended res judicata effects. Plaintiff could have reserved certain rights under the Stipulation for subsequent litigation but this was not done.  The Court is not willing to supply by inference what Plaintiff failed to expressly provide, especially when that inference would suspend the application of the applicable principles of preclusion.

As the Stipulation was entered into on January 9, 2007 and this matter was filed January 8, 2007, there is no period after the Stipulation was signed for which Plaintiff could recover.

Plaintiff chose her forum to litigate the sex discrimination issues at the Women's Prison, that forum was with the State's Human Right Bureau.  She had the opportunity to fully litigate those claims and obtain judicial review in state court of those claims.  Plaintiff chose to settle those issues as evidenced by the

Stipulation and Dismissal in evidence.  As such, she is precluded from again

pursuing these same issue in this Court.

Therefore, Court Six of Plaintiff's Amended Complaint alleging sex

discrimination under 42 U.S.C. § 1983 and Title IX will be recommended for

dismissal.

### 4.  August 25, 2005 Dismissal of Plaintiff's Retaliation Allegation

On March 1, 2005, Plaintiff submitted a second Complaint of

Discrimination to the Montana Human Rights Bureau alleging she was fired from

her job as an assistant librarian on January 14, 2005 in retaliation for filing her

first gender discrimination complaint.

On August 21, 2005, the Human Rights Bureau Investigator issued a report

finding Plaintiff's allegations were not supported by a preponderance of the

evidence.  The investigator found Plaintiff failed to prove retaliation because she

was replaced with another inmate who had also been a party to the sex

discrimination complaint.  Plaintiff was given a notice of dismissal and notice of

right to file a civil action in district court on August 25, 2005.  Plaintiff did not

appeal this finding.

The parties to Plaintiff's second complaint include the same parties in the

current litigation.  Plaintiff was a complaining inmate in the Human Rights case

and the respondent was the Montana Department of Corrections.  Again, Plaintiff

has the Director of the Department of Corrections in the current litigation.

The subject matter and issue before the Human Rights Bureau is the same as

that before this Court, whether Plaintiff was fired from the librarian job in

retaliation for filing Human Rights claim.  The Human Rights Investigator

analyzed whether Plaintiff had shown she opposed or participated in a protected

activity or filed a discrimination complaint, whether the Department of

Corrections took adverse action against her subsequent to her protected activity,

and whether there was a causal connection between the protected activity and the

adverse action.

A federal retaliation claim would require Plaintiff to demonstrate  that a

state actor took some adverse action against her because of her protected conduct,

that such action chilled her exercise of her First Amendment rights, and the action

did not reasonably advance a legitimate correctional goal.

The Court finds these issues to be sufficiently similar as to invoke

preclusive effect.

Finally, Plaintiff was given an adequate opportunity to litigate.  At the

informal investigation stage Plaintiff was able to state her claim, submit evidence,

and most importantly she was properly informed of the opportunity to appeal and

obtain judicial review of the decision.  She did not take advantage of this opportunity.  Plaintiff was informed of her right to appeal this decision and failed to do so.  Therefore, Plaintiff should be precluded from relitigating the issue of whether Defendants fired her from her librarian position in retaliation for filing complaints.  The Court should grant Defendants' Motion for Summary Judgment on Plaintiff's claim that she was retaliated against when Defendants fired her from her librarian position.

### 5.    August 25, 2008 Dismissal of First Amendment Complaint

On December 12, 2007, Plaintiff filed her third complaint with the Human Rights Bureau alleging sex discrimination, religious discrimination, and retaliation.  As part of that complaint, Plaintiff alleged she was discriminated against because she was forced to participate in the program in violation of her First Amendment rights of freedom of religion and speech.  On February 29, 2008, Plaintiff added to her complaint that she was required to attend a three-day meeting regarding the Therapeutic Community Program.

With regard to Plaintiff claim that she was treated differently based upon her gender, the Bureau found that while the therapeutic programs at Montana State Prison and Montana Women's Prison were not the same, they were substantially equivalent.

As with the two prior complaints of discrimination, the parties to Plaintiff's third complaint include the same parties in the current litigation.  Plaintiff was a complaining inmate in the Human Rights case and the respondents were the Montana Department of Corrections, the Montana Women's Prison, and the Montana Board of Pardons.  Plaintiff has named Mike Ferriter, as the Director of the Department of Corrections in the current litigation.

The subject matter at issue in Defendants' Motion for Partial Summary Judgment was included in the Human Rights Complaint (that is whether Plaintiff's freedom of religion was violated by her required participation in the Therapeutic Community Program).  The issue analyzed by the Human Rights Bureau is slightly different than that which would be required under federal law.  The Human Rights Bureau found Plaintiff failed to show that attending the Therapeutic Community impacted her negatively as a Buddhist; failed to establish the activities performed in the Therapeutic Community Program conflict with her religious practice; and failed to establish she ever articulated to the Montana Women's Prison that the Therapeutic Community concepts conflict with Buddhist teachings.  The Bureau found Plaintiff was never asked to give up Buddhism for a Christian based religion, and the prison never interfered with her practice of Buddhism.  Most importantly, it was found that the Therapeutic Community is not a religious

doctrine, it was a program of behavior modification promoting accountability, responsibility, and communication.

"For the government to coerce someone to participate in religious activities strikes at the core of the Establishment Clause of the First Amendment." *Inouye v. Kemna*, 504 F.3d 705 (9th Cir. 2007) (coercing parolees to participate in programs such as AA or NA is unconstitutional).  The basic test for Establishment Clause violations was articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), which requires that government acts (1) not have a "secular legislative purpose," (2) not have a "principal or primary effect" which either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement" with religion.  As the United States Supreme Court has clearly stated, "[n]either a state nor the Federal Government  . . .  can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion.  No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Board of Education of Ewing Township,* 330 U.S. 1, 15-16, 67 S.Ct. 504, 91 L.Ed. 711 (1947).   "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman,* 505 U.S. 577,

587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).

The Human Rights Bureau investigator made a specific finding that "[a] review of the selected sections of the TC handbook did not reveal religious doctrine.  TC is a program of behavior modification that promotes accountability, responsibility, and communication."  (Document 32-9--Exhibit 8-Final Investigative Report, p. 7).  The primary issue in the analysis of a federal Establishment Clause case is whether a plaintiff was forced to participate in a religious program.  The Human Rights Bureau Investigator evaluated and determined the Therapeutic Community Program was not a religious program. The Court finds these issues to be substantially similar enough so as to invoke preclusive effect.

Plaintiff was given an adequate opportunity to litigate this claim.  At the informal investigation stage Plaintiff was able to state her claim, submit evidence, and was informed of the opportunity to appeal and obtain judicial review of the decision.  She did not take advantage of this opportunity.  Plaintiff was informed of her right to appeal the decision and failed to do so.  Therefore, Plaintiff should be precluded from relitigating the issue of whether the Therapeutic Community was a religious program.  As the Human Rights Bureau determined it was not, Plaintiff cannot succeed on an Establishment Clause claim and Defendants's

Motion for Summary Judgment on this claim should be granted.

###    C.    CONCLUSION

Based upon the foregoing, the Court will recommend Plaintiff's claims of sex discrimination, violations of the Establishment Clause, and her retaliation claim regarding being fired from her position in the library be dismissed with prejudice based upon res judicata.

This matter will therefore proceed on Plaintiff's remaining retaliation claims that Plaintiff was denied prison employment, appropriate housing, education opportunities and vocational training programs; that her legal documents were destroyed and/or interfered with; that she was placed in lock-up; had her property searched; and refused responses to her grievances in retaliation for filing complaints against the prison.  Plaintiff named Defendants Cowee, Aldrich, Lusby, Osler, Speer, and Acton regarding these claims.  Accordingly, Defendants Ferriter and Rantz[3] will be recommended for dismissal.

## IV.    MOTION TO REINSTATE PREVIOUSLY DISMISSED CLAIMS

Plaintiff's Motion seeks to reinstate her medical care claims dismissed by Order dated June 5, 2008.  (Document 15).  Plaintiff argues the Bureau of Prisons

---

[3]Defendant Rantz was named in Plaintiff's medical care claim which was dismissed on June 5, 2008.  Defendant Rantz should have been recommended for dismissal in the Court's prior Order but was not.  Therefore, she will be recommended for dismissal herein.

treatment of her foot problems demonstrates her claims should not have been

dismissed.  The problem with Plaintiff's argument is her original claims (now

dismissed) involved only allegations of denial of medical care for a shoulder

injury.  Plaintiff's Complaint and Amended Complaint contained no allegation

regarding Plaintiff's feet.  As Plaintiff never made a claim of denial of medical

care for her feet, her motion to reinstate such a claim will be denied.

## V.      MOTION TO APPOINT COUNSEL

There is no constitutional right to appointed counsel in a claim under 42

U.S.C. § 1983.  *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn*

*on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998).  28 U.S.C.§ 1915 only

allows the Court to "request" counsel represent a litigant who is proceeding in

forma pauperis.  28 U.S.C. §1915(e)(1).  The Court cannot make "coercive

appointments of counsel."  *Mallard v. United States Dist. Court*, 490 U.S. 296,

310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989).  Therefore, the Court may request

counsel to represent an indigent litigant under 28 U.S.C. § 1915(e)(1) (formerly 28

U.S.C. § 1915(d)) only under "exceptional circumstances."  *Terrell v. Brewer*, 935

F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both
> 'the likelihood of success on the merits and the ability of the
> petitioner to articulate his claims pro se in light of the complexity of

the legal issues involved.'  Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Id*. (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted) (§ 1983 action)); *see also* *Smith-Bey v. Hospital Adm'r*, 841 F.2d 751, 760 (7th Cir. 1988) (Bivens  action).

Plaintiff argues she lacks all reasonable, meaningful access to legal resources and research materials, including reliable photocopier access; the issues are complex and require locating, interviewing, and preparing witnesses for trial many of whom have relocated; she has been moved to a federal prison in California and is unable to communicate with potential witnesses; federal prison rules severely restrict Plaintiff's legal property to one cubic foot storage box; the complexity of the case may require expert witnesses and an investigator; Plaintiff is indigent receiving only $12 - $18 per month; Plaintiff will be incarcerated in federal prison until July 2013; and Plaintiff's mail is routinely refused for delivery.

Pro se litigants are rarely in a position to research and investigate facts easily, but this alone does not deem a case complex.  *See* *Wilborn*, 789 F.2d at 1331.  Similarly, the need for investigation and expert testimony alone does not warrant the finding of exceptional circumstances supporting an appointment of counsel. *See* *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997)(holding that

even though the appellant "may well have fared better-particularly in the realms of discovery and the securing of expert testimony-but this is not the test."), overruled on other grounds, *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).

Based on the foregoing, the Court issues the following:

### ORDER

1.  Plaintiff's Motion to Reinstate Previously Dismissed Claims (Document 39) is **DENIED.**

2.  Plaintiff's Motion to Appoint Counsel (Document 41) is **DENIED**.

3.  Any further motions with supporting briefs shall be filed and served on or before **July 31, 2009.**  Briefing shall be in accordance with Rule 7 of the Local Rules of the United States District Court for the District of Montana.

4.  If no dispositive motions are filed on or before the motions deadline, defense counsel shall assume responsibility for convening a conference of all parties for the purpose of preparing a Proposed Final Pretrial Order.  Counsel shall ensure that all tasks are accomplished as set forth in the Attachment to the Court's prior Scheduling Order (Document 17) on or before **August 31, 2009.**  A Final Pretrial Conference and trial date will then be set by further Order of the Court.

5.  At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of

address and its effective date.  Such notice shall be captioned "NOTICE OF

CHANGE OF ADDRESS."  The notice shall contain only information pertaining

to the change of address and its effective date, except if Plaintiff has been released

from custody, the notice should so indicate.  The notice shall not include any

motions for any other relief.  Failure to file a NOTICE OF CHANGE OF

ADDRESS may result in the dismissal of the action for failure to prosecute

pursuant to Federal Rule of Civil Procedure 41(b).

Further, the Court issues the following:

## RECOMMENDATION

1.  Defendants' Motion for Partial Summary Judgment (Document 28)

should be **GRANTED**.  Plaintiff's claims of sex discrimination, violations of the

Establishment Clause, and her retaliation claim regarding being fired from her

position in the library should be **DISMISSED WITH PREJUDICE** based upon

res judicata.

2.  Defendants Ferriter and Rantz should be **DISMISSED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written

objections to these Findings and Recommendations within ten (10) business days

of the date entered as indicated on the Notice of Electronic Filing.  Any such filing

should be captioned "Objections to Magistrate Judge's Findings and

Recommendation."

A district judge will make a de novo determination of those portions of the

Findings and Recommendation to which objection is made.  The district judge

may accept, reject, or modify, in whole or in part, the Findings and

Recommendation.  Failure to timely file written objections may bar a de novo

determination by the district judge and may waive the right to appeal the District

Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be

filed until entry of the District Court's final judgment.

DATED this 27th day of May, 2009.

*/s/ Keith Strong*
Keith Strong
United States Magistrate Judge