IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| FAYE E. SLICE,<br><br>        Plaintiff,<br><br>   vs.<br><br>MIKE FERRITER, Director of<br>the Montana Department of<br>Corrections, et. al.,<br><br>        Defendants. | Cause No. CV 07-0004-H-DWM-RKS<br><br><br>FINDINGS AND RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE JUDGE TO<br>GRANT DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

At issue is Defendants' Motion for Summary Judgment filed July 29, 2009.  (Court's Doc. 50).  After several extensions, Plaintiff filed her response to Defendants' Motion on November 20, 2009.  (Court's Doc. 77).  Defendants filed their reply December 4, 2009.  (Court's Doc. No. 79).

I.  STATEMENT OF THE CASE

   A.    Jurisdiction

Plaintiff filed her Complaint pursuant to 42 U.S.C. § 1983.  After prescreening pursuant to 28 U.S.C. § 1915 and 1915A, the only

remaining claims involve Plaintiff's allegations of retaliation.  There is federal question jurisdiction pursuant to 28 U.S.C. § 1331.

B.    Parties

Plaintiff is currently a federal prisoner incarcerated at the Dublin Federal Correctional Institution in California.  At all times relevant to her Complaint, Plaintiff was incarcerated at the Montana Women's Prison in Billings, Montana.

The remaining Defendants are:  Jo Acton, Deputy Warden of the Montana Women's Prison; Michael Aldrich, Deputy Warden of Montana Women's Prison; Gloria Cowee, Grievance Officer and member of the prerelease screening committee at the Montana Women's Prison; Fern Osler, Administrative Specialist for the Board of Pardons and member of the prerelease screening committee at the Montana Women's Prison; Kelly Speer, former Butte probation officer and currently employed with the Montana Department of Corrections; and D.I. Lusby, employed in the ICP/Boot Camp program at the Montana Women's Prison.

C.    Allegations

Plaintiff's retaliation claim alleges she suffered prolonged and

significant retaliation by the Department of Corrections and Montana

Women's Prison as a result of complaints she filed with the Montana

Supreme Court and the Montana Human Rights Bureau about sex

discrimination at the Department of Corrections and the Montana

Women's Prison since 2003.  The remaining allegations are that

Plaintiff was denied prison employment, appropriate housing,

education opportunities, and vocational training programs; her legal

documents were destroyed and/or interfered with; she was placed in

lock-up; had her property searched; and refused responses to her

grievances in retaliation for filing complaints against the prison.

II.   MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if they demonstrate

"there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate where the documentary evidence

produced by the parties permits only one conclusion.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of

setting forth the basis of the motion and identifying those portions of

the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party meets this burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.

Plaintiff "must produce at least some 'significant probative evidence tending to support the complaint.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(citations omitted). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Anderson, 477 U.S. at 248. At the summary judgment stage, the Court does not weigh the evidence or determine the truth of the matter, but ascertains whether there is a genuine issue for trial. If the evidence is merely colorable or is not

significantly probative, summary judgment may be granted.  Anderson,

477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of
> the [non-moving party's] position will be insufficient; there
> must be evidence on which the jury could reasonably find for
> the [non-moving party].  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find by a
> preponderance of the evidence that the plaintiff is entitled to
> a verdict.

Anderson, 477 U.S. at 252.

This case is beyond the pleading stage but the procedural

shortcomings in Plaintiff's filings were not held against her here; "[a]

document filed pro se is 'to be liberally construed,' and 'a pro se

complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers.'" Erickson v.

Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200, 167 L.Ed.2d 1081 (2007) (per

curiam); Cf. Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to

do substantial justice").

A.    UNDISPUTED FACTS

Defendants' Statement of Undisputed Facts is long and detailed.

Plaintiff failed to file a Statement of Genuine Issues, contrary to Local

Rule 56.1(b).  Given the lengthy nature of the facts, the Court will only

discuss those facts relevant herein and will do so in the analysis section.

By way of background though, it is undisputed that Plaintiff first filed a complaint against the Montana Women's Prison to the Montana Supreme Court in July or August of 2003.  There, Plaintiff alleged inmates at the Women's Prison were denied parity with male inmates at Montana State Prison in education, jobs, etc.  The Montana Supreme Court rejected the complaint stating it was filed in an inappropriate venue. (Court's Doc. 70–Statement of Undisputed Facts, ¶ 1).

On November 11, 2004, Plaintiff filed a complaint with the Montana Human Rights Bureau alleging sex discrimination at Montana Women's Prison.  Plaintiff alleged women inmates were denied equal opportunities routinely afforded to male inmates at Montana State Prison.  (Court's Doc. 70–Statement of Undisputed Facts, ¶ 1; Court's Doc. 32-2, p. 1, ¶ II:  Complaint of Discrimination (Exhibit 1 to Murray Affidavit)).

On May 11, 2005, the Human Rights Bureau, after conducting an informal investigation, issued its Final Investigative Report, finding Plaintiff's allegations in her November 11, 2004 complaint were

supported by a preponderance of evidence.  The Human Rights Bureau recommended a finding of reasonable cause to believe unlawful discrimination occurred.  (Court's Doc. 31-2:  HRB Final Investigative Report; Slice's Exhibit to Supplement to Amended Complaint, Doc. 9).

On January 9, 2007, Plaintiff and the Department of Corrections entered into a Stipulation to resolve the November 11, 2004 Complaint "outside of costly litigation."  (Court's Doc. 32-2:  January 9, 2007 Stipulation).

Plaintiff filed her Complaint in this Court on January 8, 2007. (Court's Doc. 1).

B.  ANALYSIS

There are a number of claims discussed by Defendants in their Motion for Summary Judgment which Plaintiff did not address. Specifically, Plaintiff did not respond to Defendants' arguments regarding her employment as a computer lab assistant, a Montana Correctional Enterprises Industries Clerk, and as Business Leader and Senior Coordinator.  In addition, she did not respond to Defendants' arguments regarding an alleged failure to respond to grievances. Plaintiff presented no evidence or testimony to dispute Defendants'

arguments on these claims.  Having reviewed Defendants' arguments and evidence, the Court deems Defendants' arguments well-taken and recommends summary judgment be granted on these claims.

Similarly, Plaintiff failed to relate or provide admissible evidence connecting a named Defendant to the following allegations:  (1) denial of assistant librarian position in July 2005; (2) housing claims; (3) loss of legal property claims; (4) returned mail; (5) search of legal property;[1] and (6) denial of computer classes.  Plaintiff presented no admissible evidence that any named defendant was involved in these alleged retaliatory actions.  As such, each of these claims will be recommended for dismissal on summary judgment.

The Court will now analyze Plaintiff's claims that she was not hired in the library in March 2006 and November 2006 and was placed in lock-up in December 2006 in retaliation for her litigation activities.[2]

_____

[1]Plaintiff did state that her cell was searched at the direction of Defendant Aldrich but she presented no admissible evidence in support of this conclusory statement.  There being no admissible evidence connecting Defendant Aldrich to this claim, it will be recommended for dismissal on summary judgment.

[2]Plaintiff's claims regarding placement in prerelease have been dismissed. (Court's Doc. 10–April 22, 2008 Findings and Recommendations, p. 7 adopted in full by Court's doc. 15–June 5, 2008 Order).

### 1.  Federal Law on Retaliation

"Within the prison context, a viable claim of First Amendment

retaliation entails five basic elements:  (1) an assertion that a state

actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the

inmate's exercise of his First Amendment rights, and (5) the action did

not reasonably advance a legitimate correctional goal." Rhodes v.

Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To

prove retaliation, a plaintiff must show that the defendants took

adverse action against him or her that "would have chilled or silenced a

person of ordinary firmness from future First Amendment activities."

White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino

Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Retaliation is not established simply by showing adverse activity

by a defendant after protected speech; rather, a plaintiff must show a

nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893,

899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy

of post hoc, ergo propter hoc, i.e., "after this, therefore because of this,"

summary judgment proper against plaintiff who could only speculate

that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier); but see Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1315-16 (9th Cir. 1989) (evidence of timing and nature of suspensions sufficient to infer retaliatory motive).

Plaintiff must show her activities were constitutionally protected, the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and the retaliatory action advanced no legitimate penological interest.  Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence.  Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

The filing of civil rights actions constitutes the exercise of constitutional rights.  But the simple allegation that certain retaliatory actions occurred after Plaintiff's prior civil rights actions were filed does not, without more, establish retaliation; rather, Plaintiff must show a nexus between the two.  See Huskey, 204 F.3d at 899.  Plaintiff

argues that several instances of conduct establish retaliatory intent but
never establishes a nexus between the filing of her complaints and the
alleged retaliatory actions.

Plaintiff seems to allege that every decision not in her favor
between 2003 (when she initially filed her complaints) and 2008 (when
she was paroled to federal prison) amounted to retaliation.  As set forth
above, that is insufficient to establish a retaliation claim.

Plaintiff has made three attempts to establish this nexus and
demonstrate retaliatory intent.  First, she discussed in her deposition
that other staff members told her about conversations with Defendants
wherein Defendants indicated they need to make sure Plaintiff did not
get housing or legal access.  (Court's Doc. 70-1, p. 12—Slice Depo, lines
17-22).  She also alleges in her response brief that Defendant Lusby
told staff members that Plaintiff needed to be "shut down."  (Court's
Doc. 77, p. 14).  The hearsay conversations of what other people told
Plaintiff other people said is not admissible evidence and cannot be
considered in this proceeding.  Plaintiff "must establish the existence of
a genuine factual dispute on the basis of <u>admissible evidence</u>; bare
allegations without evidentiary support are insufficient to survive

summary judgment." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1033 n. 14 (9th Cir.2008) (emphasis added). Plaintiff has not done so.

Secondly, Plaintiff attempts to show retaliatory intent by pointing to a February 29, 2009 disciplinary hearing. The Court reviewed the transcript of that hearing and finds it does not establish retaliatory intent. While there was a mention of Plaintiff's lawsuit in that meeting, it was only the statement that "Also your lawsuit insisting on parity with the men's prison and canteen, our ladies, your friends lost, they didn't gain." (Court's Doc. 77-1, p. 38). This statement alone is insufficient to establish retaliatory intent.

Finally, Plaintiff contends she was a model inmate and therefore the Court must view any argument of penological interest with skepticism. But the alleged actions taken against Plaintiff do not involve punishment. Rather, Plaintiff complains about employment decisions, housing decisions, lost mail, and lost documents. While there is one complained incident involving lock down, that incident is explained on other non-retaliatory grounds. The mere fact Plaintiff may have been a model inmate is insufficient to establish retaliatory

intent.

Defendants presented undisputed evidence of legitimate reasons for not hiring Plaintiff for certain jobs and placing her in lock-up. While Plaintiff disputes Defendants' reasons for taking these actions, she provided no nexus or reasonable basis upon which to conclude these actions were taken in retaliation for her litigation activities.

   2.  <u>Employment</u>

Plaintiff worked as Library Assistant from approximately February 2004 to January 14, 2005, as a Dog Trainer from June 2004 to November 2004, and as a cook from approximately April 2005 to July 2005. Plaintiff was on leave to federal court between July 25, 2005, to March 1, 2006. When she returned to the prison, Plaintiff was offered a position as the Photoshop Clerk on March 4, 2006. She declined the position because she wanted to be the Chaplain's Assistant. Plaintiff worked as the Chaplain's Assistant from April 17, 2006, until approximately March or April of 2008. She worked as the Volunteer Movement Coordinator Assistant, a paid position, from June 2, 2006, until approximately March or April of 2008. Plaintiff also worked as the Hobby Clerk from March 30, 2007, until she was paroled to her

federal detainer and transferred to federal custody on May 16, 2008.

(Court's Doc. 70—Defendants' Facts ¶¶ 4-5 citing Aff. Hartman, ¶ 4).

The prison utilized scoring grids to make inmate hiring decisions.

Deputy Warden Michael Aldrich instituted the Scoring Grids because

he wanted an objective, fair process to select an inmate for a job.  The

job application process required the inmate supply certain information,

such as computer classes taken, education, clear conduct, etc., and

points would be given in those areas on the Scoring Grid.  The inmate

with the highest number of points would be offered the job unless there

were other circumstances that prevented her from being hired.  This

procedure was intended to encourage inmate self-improvement.

Computer classes completed outside the Prison would be given points

on the Scoring Grid if the inmate had a certificate or something in

writing that verified the inmate had completed the class.  (Court's Doc.

70—Defendants' Facts ¶¶ 4-5 citing Aff. Aldrich, ¶ 7).

### a. Library Assistant position in March 2006

Lieutenant Mark Hartman was in charge of inmate employment

in 2006 when Plaintiff applied for the library positions.  (Court's Doc.

70—Defendants' Facts ¶ 12 citing Aff. Aldrich, ¶ 8; Aff. Hartman, ¶ 8).

Lt. Hartman testified he did not hire Plaintiff for the Library Assistant position in March 2006 because she did not receive the most points on the Scoring Grid.  The job posting notifies the inmate that she must submit a letter of interest and interested qualified applicants would be scored on the listed criteria, which includes education level and computer classes completed or enrolled in, and that the inmate with the most points will be offered the job.  (Court's Doc. 70–Defendants' Facts ¶ 13).

In her letter of interest regarding the March 2006 job, Plaintiff did not provide information that she had a high school diploma or GED, and she did not provide the specific computer classes she had taken. (Court's Doc. 70–Defendants' Facts ¶ 20 citing Aff. Hartman, ¶ ¶ 13, 14; Aff. Aldrich, ¶ 9).

On March 16, 2006, Plaintiff submitted an Inmate Request to Staff Member Form, or kite, requesting an explanation of the hiring process.  Lt. Hartman responded "Ms. Slice, You did score 2nd in points, however, Ms. Evans had more than you did.  I suggest that you fill out a more complete resume next time."  (Court's Doc. 70–Defendants' Facts ¶ 24 citing Aff. Hartman, ¶ 18).

On March 22, 2006, Plaintiff submitted an Informal Resolution regarding her not being hired for the Library Assistant position. Deputy Warden Aldrich responded, "Met with I/M Slice and discussed how to properly fill out a MWP job applicant [sic]." (Court's Doc. 70–Defendants' Facts ¶ 25 citing Aff. Cowee, ¶ 10; Aff. Aldrich, ¶ 9). Deputy Warden Aldrich met with Plaintiff regarding her Informal Resolution and discussed with her how to properly fill out a prison job application. He told her she must specifically list all the information requested in the job posting, such as computer classes, education, etc. This was information Plaintiff

needed to know not only for the Library Assistant position, but for any job at the prison. (Court's Doc. 70–Defendants' Facts ¶ 26 citing Aff. Aldrich, ¶ 9).

On March 30, 2006, Plaintiff submitted a Grievance regarding not being hired to the Library Assistant position. After investigating the Grievance by speaking with Lt. Hartman, Grievance Coordinator, Gloria Cowee responded, "Ms. Slice did not receive the highest score on the job application. She did not fill out the application completely." (Court's Doc. 70–Defendants' Facts ¶ 27 citing Aff. Cowee, ¶ 10).

### b. Head Librarian position in November 2006

Plaintiff had the most points on the scoring grid for the Head Librarian position.  When Lt. Hartman told Deputy Warden Aldrich it was Plaintiff with the most points on the Scoring Grid, Deputy Warden Aldrich said Plaintiff was not eligible for the job since she had been previously fired from a Library position for unauthorized use of the Library computer.  (Court's Doc. 70—Defendants' Facts ¶ 29 citing Aff. Hartman, ¶ 20; Aff. Aldrich, ¶ 11).

Plaintiff has not shown a genuine issue of material fact regarding Plaintiff's employment at the Montana Women's Prison.  First, while Plaintiff filed her human right complaints 2003 and 2004, she was hired as a librarian assistant in February 2004 (after the filing of her complaint with the Montana Supreme Court).  She held that position until January 2005.  Thereafter, as set forth above, she was nearly continuously employed during the time she was incarcerated at the Prison.  Therefore, she cannot reasonably establish she was denied employment in retaliation for her litigation activities.

Second, Lieutenant Hartman made the hiring decision in March 2006.  He is not named as a Defendant in this case.  While some of the

named defendants may have signed off on denials of Plaintiff's
grievances regarding these jobs, that alone is insufficient to establish
direct personal participation in the alleged retaliation.

Finally, Plaintiff argues she had a computer/technologies
emphasis bachelor of science degree from Montana Tech with computer
competency that exceeded the prison's computer courses. (Court's Doc.
77–Plaintiff's response, p. 16). She alleges she listed these courses on
her resume.

Defendants produced the scoring grids and documents submitted
by the inmates applying for this position. According to those
documents, Plaintiff did not submit her resume until she applied for
the Head Librarian job. Plaintiff does not specifically dispute this. She
argues the computer skills were listed on her resume but she does not
state she submitted her resume with each job application.

There is a complete lack of evidence demonstrating a retaliatory
nexus between the filing of Plaintiff's Complaints in 2004 and the
denial of librarian jobs in 2006. Defendants presented evidence of
legitimate penological reasons for not hiring Plaintiff for the library
jobs. In addition, Plaintiff was given other jobs around the prison–just

not the library jobs that she wanted.  Plaintiff failed to demonstrate a

genuine issue for trial on these claims and they will be recommended

for dismissal upon summary judgment.

      3.  <u>Lock up</u>

On December 2, 2006, there were serious behavior problems

throughout the day in B-Pod, in that the inmates did not want to

participate in Therapeutic Community.  At approximately 5:45 p.m.,

Correctional Counselor Lusby and Correctional Officer Witz were in Lt.

Schroeckenstein's office discussing the situation in B-Pod.  Lt.

Schroeckenstein was the day shift supervisor on that date, and his shift

ended at 6:00 p.m.  Lt. Schroeckenstein told Correctional Counselor

Lusby that due to the behavioral problems in B-Pod throughout the

day, the inmates in B-Pod should be placed in their cells, and should be

required to complete a Thinking Error Report (TER), a sanction in

which the inmate must think about and write down their behavior and

what they can do differently.  A TER is a method of discipline. It is an

"instant sanction," meaning that it is an expeditious way to discipline

an inmate in lieu of doing a formal writeup.  Correctional Counselor

Lusby understood from Lt. Schroeckenstein's statement that if the

inmates did not complete the TER's, they would remain confined in their cells.  (Court's Doc. 70—Defendants' Facts ¶ 156 citing Aff. Schroeckenstein, ¶¶ 3, 4, 5; Aff. Lusby, ¶ 12; Aff. Dolezal, ¶ 4).

Correctional Counselor Lusby told the expediter, who is an inmate designated to make announcements, to announce that everyone on B-Pod would be required to fill out a TER.  After the expediter made the announcement, Plaintiff yelled from the other end of the day room that Correctional Counselor Lusby did not use the chain of command. Normally, Correctional Counselor Lusby would have talked to the Senior Coordinator before having the expediter make an announcement, but this was not a normal situation.  Plaintiff went to where the grievance forms were kept, took all of them, and threw a grievance form into each cell in B-Pod.  As Plaintiff walked past Correctional Counselor Lusby, Plaintiff stated that she would not fill out a TER.  Correctional Counselor Lusby remained on B-Pod until 6:00 p.m., collecting the completed TERs.  Plaintiff was the only inmate who did not submit a TER.  (Court's Doc. 70—Defendants' Facts ¶ 158 citing Aff. Lusby, ¶ ¶13, 14).

At approximately 6:00 p.m., Correctional Counselor Lusby went to

the Shift Supervisor's office and informed Lt. Schroeckenstein and Lt. Dolezal that Plaintiff refused to fill out a TER, as ordered by Lt. Schroeckenstein.  Lt. Dolezal asked Correctional Counselor Lusby to remain in the office until after shift briefing, and then to return with him to B-Pod to give Plaintiff another chance to fill out a TER.  Lt. Dolezal had a good relationship with Plaintiff and hoped to get the issue resolved.  (Court's Doc. 70–Defendants' Facts ¶ 159 citing Aff. Lusby, ¶ 14; Aff. Schroeckenstein, ¶ 5; Aff. Dolezal, ¶ 4, 5).

After briefing, Lt. Dolezal and Correctional Counselor Lusby went to B-Pod.  Correctional Counselor Lusby asked Plaintiff if she was going to fill out a TER.  Plaintiff responded, "No. I will not."  Lt. Dolezal also asked Plaintiff a few times if she would fill out a TER.  Plaintiff stated that she would not.  Lt. Dolezal asked Plaintiff if she knew what it meant if she does not do a TER.  Plaintiff responded, "That would be refusing a direct order."

Lt. Dolezal and Correctional Counselor Lusby then escorted Plaintiff to C-Pod, which is temporary lock-up, for refusing a direct order.  Lt. Dolezal, the lieutenant on duty at that time, alone made the decision to place Plaintiff in lock-up.  It is always the Lieutenant on

duty's decision whether to place an inmate in lock-up.  (Court's Doc. 70—Defendants' Facts ¶ 160 citing Aff. Dolezal, ¶ ¶ 6, 7; Aff. Lusby ¶ 15).  Lt. Dolezal filled out a Disciplinary Infraction Report Notice of Hearing regarding the incident and the fact that he placed Plaintiff in temporary lockup for refusing a direct order.  (Court's Doc. 70—Defendants' Facts ¶ 162 citing Aff. Dolezal, ¶ 6).

On December 3, 2006, Plaintiff filed an Informal Resolution and a Grievance concerning her being placed in lock-up for disobeying a direct order to complete a TER.  On December 5, 2006, Hearings Officer Gloria Cowee issued a Disciplinary Hearing Decision in which she found Plaintiff "not guilty."  The reason Hearings Officer Cowee found Plaintiff not guilty was because she spoke with Correctional Counselor Lusby and it was Lusby's understanding from Lt. Schroeckenstein that if the inmates did not complete the TERs they would remain locked up in their rooms.  This decision was reviewed and upheld by Warden Acton.  Plaintiff did not wish to appeal.  (Court's Doc. 70—Defendants' Facts ¶ 165 citing Aff. Cowee, ¶ 20).

Plaintiff contends her placement in lock up on December 2, 2006 was in retaliation for asserting her First Amendment rights.  But

Plaintiff admits every inmate on B-pod was ordered to do a TER or lock

down in the cell for the night.  Plaintiff chose to be locked down in her

cell for the night.  (Court's Doc. 77, p. 20).  It is undisputed that Lt.

Dolezal (who is not a Defendant) made the decision to place Plaintiff in

lock-up and that Plaintiff was found not guilty of the charge by

Defendant Cowee.  There can be no reasonable finding of retaliation

when a non-defendant (Lt. Dolezal) made the decision to lock Plaintiff

up and thereafter a named defendant found her not guilty.  This claim

should be dismissed.

C.    CONCLUSION

Plaintiff's claims against Defendants are insufficient to survive

summary judgment.  Plaintiff failed to produce sufficient evidence to

overcome the undisputed evidence presented by Defendants.

1.    <u>Certification Regarding Appeal</u>

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in
the district-court action, or who was determined to be
financially unable to obtain an adequate defense in a
criminal case, may proceed on appeal in forma pauperis
without further authorization, unless:
(A) the district court-before or after the notice of appeal is
filed-certifies that the appeal is not taken in good faith or

finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous."  Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).  "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."  Walker v. O'Brien, 216 F.3d 626, 631 (9th Cir. 2000).

No reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

2.  <u>Address Changes</u>

At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to <u>Fed.R.Civ.P. 41(b)</u>.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendants' Motion for Summary Judgment (Court's Doc. 50) should be GRANTED and this matter DISMISSED WITH PREJUDICE.

2.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to <u>Rule 58 of the Federal Rules of Civil Procedure</u>.

3.  The Clerk of Court should be directed to have the docket

reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A)

that any appeal of this decision would not be taken in good faith.  No

reasonable person could suppose an appeal would have merit.

NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file

written objections to these Findings and Recommendations within

fourteen (14) days of the date entered as indicated on the Notice of

Electronic Filing.  Any such filing should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those

portions of the Findings and Recommendations to which objection is

made.  The district judge may accept, reject, or modify, in whole or in

part, the Findings and Recommendations.  Failure to timely file written

objections may bar a de novo determination by the district judge and

may waive the right to appeal the District Court's order.   Martinez v.

Ylst, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit

Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P.

4(a)(1), should not be filed until entry of the District Court's final

judgment.

DATED this 10th  day of December, 2009.


 /s/ Keith Strong

Keith Strong
United States Magistrate Judge